UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#21

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Defendants' motion for summary judgment

Before the Court is Defendants/Counter-Claimants Scottsdale Insurance Company ("Scottsdale"), the County of Monterey ("the County"), and The Sports Car Racing Association of the Monterey Peninsula's ("SCRAMP") (collectively "Defendants") motion for summary judgment. *See* Dkt. # 21 ("*Mot.*"). Plaintiff Evanston Insurance Company ("Evanston" or "Plaintiff") has opposed this motion, *see* Dkt. # 27 ("*Opp.*"), and Defendants replied, *see* Dkt. # 28 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion.

I.   Background

   A.   The Underlying Incident

The facts underlying this insurance coverage case are largely not in dispute.

A company named Keigwins@theTrack, Inc. ("Keigwins") is in the business of sponsoring motorcycle racing events at popular California racetracks. *See Plaintiff's Statement of Additional Undisputed Facts*, Dkt. # 27-1, at 14–25 ("*Pl. SUF*"), ¶ 21. One of those tracks is Laguna Seca Raceway, which is owned by the County and operated by SCRAMP. *See id.* ¶ 25. Keigwins entered into an agreement with SCRAMP to rent the Laguna Seca Raceway for a motorcycle track day event to be held on March 14 and 15, 2016. *See Defendants' Statement of Undisputed Facts*, Dkt. # 22 ("*Def. SUF*"), ¶ 5. During the event, a motorcyclist named Mariusz Dziurzynski was injured, allegedly when he drove off the track, through a gravel runoff area, and into a ditch, where he ran into an exposed pipe and was ejected from his motorcycle. *See id.* ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

Dziurzynski filed a government tort claim against the County and then a civil lawsuit against Keigwins, the County, and SCRAMP, bringing claims for dangerous condition of public property against the County and gross negligence against Keigwins, the County, and SCRAMP. *See id.* ¶ 7. The case currently before *this* Court is a dispute over which insurance company is responsible for defending and indemnifying the County and SCRAMP against Dziurzynski's claims, which turns on the question of whether the County and SCRAMP are covered as additional insureds under a policy Plaintiff Evanston issued to Keigwins.

B.   The Evanston Policy

Plaintiff Evanston issued a general commercial liability insurance policy to Keigwins that indemnified the company for liability up to $1 million per event arising out of specified events Keigwins organized, including the March 14 and 15 event at the Laguna Seca Raceway. *See Ex. A to Declaration of Andrew H. Swartz*, Dkt. # 21-2 ("*Evanston Policy*"), at A-5–A-6. The County and SCRAMP were listed on the Certificate of Insurance as additional insureds. *See Ex. K to Declaration of Gill Campbell*, Dkt. # 21-13 ("*Certificate of Insurance*").

The dispute currently before the Court revolves around the interpretation of two endorsements dealing with coverage of additional insureds. The first endorsement, which the Court will refer to as the "Premises Endorsement," is entitled "Additional Insured Endorsement – Primary." *Evanston Policy* at A-11. It provides:

> The section of this policy, entitled Who Is An Insured Under This Policy, is amended to include the person(s) and/or organization(s) . . . referred to as the Additional Insureds, *but only with respect to Injury or Damage that . . . arises out of the premises that, at the time of the Event or Offense, was owned, rented or leased by the Named Insured.*

*Id.* (emphasis added). This endorsement further provides:

> Solely with respect to the coverage provided by this endorsement, the section of this policy, entitled Other Insurance, is deleted and replaced with the following:
>
> "The coverage provided by this insurance is primary and non-contributory"
> All other terms and conditions remain unchanged.

*Id*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

The second endorsement, which the Court will refer to as the "Negligence Endorsement," is entitled "Additional Insured – Certificate Holders." *Id.* at A-14. It provides:
The section of this policy, entitled Who Is An Insured Under This Policy, is amended to include any organization required by contract, identified as an additional insured on a Certificate of Insurance . . . *but only for liability arising out of the negligence of the named Insured.*

*Id.* (emphasis added).

The parties disagree about how these endorsements should be interpreted. Defendants contend that the Premises Endorsement requires Evanston to defend and indemnify the County and SCRAMP against Dziurzynski's claims because they allege an injury that "arises out of the premises" (i.e. the Laguna Seca Raceway) that was "rented . . . by the Named Insured" (i.e. Keigwins). *See generally Mot.* Evanston counters, relying on extrinsic evidence, that the Premises Endorsement was never intended to override the Negligence Endorsement, which provides that additional insureds are insured only "for liability arising out of the negligence of the named Insured." Accordingly, Evanston argues that its policy does not cover the County and SCRAMP for Dziurzynski's injuries because they resulted from SCRAMP's negligence, not Keigwins'.[1] *See generally Opp.*

C. Procedural History

After Dziurzynski filed his claims, Evanston accepted tender of the claims and agreed to defend Keigwins, the County, and SCRAMP subject to a reservation of rights. *Def. SUF* ¶ 8. In August 2018, the state court granted summary judgment in favor of the County and Keigwins. *See id.* ¶ 10. The court found that Keigwins was not liable for gross negligence, though it declined to rule on whether Keigwins could be liable for ordinary negligence, finding that Dziurzynski had signed a waiver that waived any ordinary negligence claims. *See Ex. I to Decl. of Andrew H. Swartz*, Dkt. # 21-10, 2:12–16. The state court denied SCRAMP's motion for summary judgment, finding that factual disputes remained as to whether SCRAMP was liable for gross negligence. *See Def. SUF* ¶ 10.

---

[1] Whether Dziurzynski's injuries arose from Keigwins' negligence is not at issue in the current motion. As explained below, the state court found that Keigwins did not commit gross negligence but it declined to decide whether Keigwins committed ordinary negligence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

Shortly before the remaining claim against SCRAMP was set to be tried in state court, Evanston sent a letter to the County and SCRAMP informing them that while it would continue to defend SCRAMP in the case, it would not indemnify the County or SCRAMP for any damages owed to Dziurzynski because it had determined, in light of the state court summary judgment ruling, that Dziurzynski's injuries were not caused by Keigwins' (the named insured's) negligence. *See id.* ¶ 12. Evanston then brought this case, asking the Court for a declaratory judgment that it did not have a duty to defend or indemnify the County and SCRAMP and seeking equitable contribution from Defendant Scottsdale.[2] *See Complaint*, Dkt. # 1. Defendants responded with counterclaims against Evanston, seeking declaratory judgments that Evanston has a duty to defend the County and SCRAMP and to indemnify SCRAMP, that Evanston's coverage is primary,[3] and that Evanston must reimburse Scottsdale for defense costs and any indemnity payments. *See Counterclaims*, Dkt. # 14, at 9–17.

Defendants now move for summary judgment on both Evanston's claims and their counterclaims. *See generally Mot.*

II.   Legal Standard

   A.   Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] Scottsdale is a party to this case because if Evanston's policy does not cover SCRAMP, Scottsdale will have to indemnify SCRAMP under a separate general commercial liability policy that lists SCRAMP as the named insured. *See Def. SUF* ¶ 13.

[3] In its opposition, Evanston has not disputed that its policy would be primary and non-contributory if it is interpreted to provide coverage to the County and SCRAMP. Arguments to which no response is supplied are deemed conceded. *See, e.g.*, *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). Accordingly, the Court concludes that the Evanston policy is primary and non-contributory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

      B.    <u>California Insurance Contract Interpretation</u>

In general, under California law, interpretation of an insurance policy is decided under settled rules of contract interpretation. *See California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 194 (2012) (citing *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004)). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contract interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) (internal citations omitted). An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert. *See Bischel v. Fire Ins. Exch.*, 1 Cal. App. 4th 1168, 1176 (1991).

To determine if a policy is ambiguous, the court must provisionally consider credible extrinsic evidence to determine if a policy provision is "reasonably susceptible to an alternative meaning." *See Pac. Gas & Elec. Co. v. G.W. Thomas Drayage Co.*, 69 Cal. 2d 33, 39–40 (1968); *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) ("A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."). "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Bank of the W.*, 2 Cal. 4th at 1265.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

"If the policy language 'is clear and explicit, it governs.'" *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1074–75 (2003). If there is ambiguity, the court must construe the ambiguity "against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994). "To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly." *Medina v. GEICO Indem. Co.*, 8 Cal. App. 5th 251, 259 (2017) (citing *Stellar v. State Farm Gen. Ins. Co.*, 157 Cal. App. 4th 1498, 1503 (2007)).

III.   Discussion

    A.   The Meaning of the Evanston Policy

The meaning of the Evanston policy turns on the interplay between the Premises Endorsement and the Negligence Endorsement. Defendants view the two endorsements as operating independently of one another: the Premises Endorsement provides additional insureds with coverage for injuries arising out of the premises rented by the named insured, and the Negligence Endorsement provides additional insureds with coverage for injuries arising out of the named insured's negligence. *See Mot.* 12:1–14:23. Because the Premises Endorsement says nothing about negligence on the part of the named insured, Defendants contend that Keigwins' negligence is irrelevant to whether they are covered by the Premises Endorsement. *See Mot.* 12:19–14:23.

The Court agrees with Defendants that language of the policy is unambiguous and that it supports their position that coverage under the Premises Endorsement does not turn on whether an injury was caused by the named insured. The Premises Endorsement and Negligence Endorsement each read: "The section of this policy, entitled Who Is An Insured Under This Policy, is amended to include" the additional insureds "but only for . . . . " injuries arising out of the premises rented by the named insured (for the Premises Endorsement) or injuries arising out of the negligence of the named insured (for the Negligence Endorsement). *See Evanston Policy*, at A-11, A-14. The language in the two endorsements unambiguously effects two separate amendments to the Who Is An Insured Under This Policy section, each one providing the additional insureds with coverage for a different type of injury.

Evanston's argument that the Premises Endorsement must be read together with the Negligence Endorsement to provide that any coverage under the Premises Endorsement is subject to a negligence requirement is not supported by the policy's plain language. The two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | | Date | May 14, 2019 |
|---|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | | |

endorsements do not reference each other, and nothing in the Premises Endorsement suggests that coverage under that endorsement is subject to a requirement that the injury at issue also qualify for coverage under the Negligent Endorsement. Nor is there any background principle that would justify applying a negligence requirement to the Premises Endorsement. California courts have held that when an additional insured provision using "arising out of" language does not clearly limit coverage to injuries caused by the named insured, no such limitation should be read into the policy. *See Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 330 (1999). That is the case here. Accordingly, the Court concludes that the text of the Evanston policy unambiguously provides the County and SCRAMP with liability coverage for any injuries arising from the premises rented by Keigwins, regardless of whether an injury was caused by Keigwins' negligence.

        *i.*     *Extrinsic Evidence*

Perhaps recognizing that the text of the policy does not support its position that additional insureds are covered only for injuries arising from the negligence of the named insured, Evanston points to extrinsic evidence that it contends shows that this was the parties' intent. Under California law, the Court must provisionally admit this evidence to determine whether the Evanston policy contains a "latent ambiguity." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006).

The evidence Evanston has put forward falls into two categories. First, Evanston focuses on the insurance history between Keigwins and Evanston. The evidence shows that from 2010 to 2013, Keigwins was insured by Evanston policies that contained only the Negligence Endorsement and not the Premises Endorsement. *See Pl. SUF* ¶¶ 35–36. Under these policies, then, the additional insureds were covered only for injuries arising out of Keigwins' negligence. In 2013, SCRAMP employee Judy Varley notified Keigwins owner Lance Keigwin by email that Keigwins' insurance policy was inadequate because it did not make clear that it was to be primary and non-contributory vis-a-vis SCRAMP's own insurance. *See id.* ¶ 37. Lance Keigwin passed this request on to his insurance broker, Naughton Insurance, which was an authorized agent of Evanston and had issued Keigwins' Evanston policies. *See id.* ¶ 38.

Evanston contends that in response to this request, Naughton added the Premises Endorsement to Keigwins' Evanston policy.[4] *See Pl. SUF* ¶ 39. In addition to the language

---

[4] Evanston's contention that the Premises Endorsement was added to the Keigwins policy in response to a request by SCRAMP is arguably unsupported by the evidence Evanston has put

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

providing coverage to additional insureds for injuries arising out of premises rented by Keigwins, the Premises Endorsement contains a statement providing that the coverage to additional insureds supplied by the endorsement is "primary and non-contributory." The Premises Endorsement then remained in the successor Evanston policies that were issued to Keigwins, including the policy at issue in this case that covered Keigwins' 2016 operations. Evanston asserts that the series of events that led to the insertion of Premises Endorsement in 2013 shows that it was added only to satisfy SCRAMP's request that the additional insured coverage be made primary and non-contributory and that the parties did not intend to otherwise alter the status quo under which additional insureds were covered only for injuries arising out of Keigwins' negligence. *See Opp.* 12:19–14:12.

In further support of this position, Evanston points to the rental agreement entered into by Keigwins and SCRAMP that allowed Keigwins to use the Laguna Seca Raceway for its March 14 and 15, 2016 event. *See Opp.* 20:23–23:3. The agreement contains an indemnity and hold harmless clause providing:

> The Permitee [i.e. Keigwins] agrees to indemnify, defend, and save harmless Monterey County . . . and S.C.R.A.M.P. . . . from any and all claims and losses accruing or resulting to any person, firm or corporation for damages, injury or death arising out of or in connection with the Permitee's activities under this permit. The maintenance of insurance as required herein shall not limit or affect the Permittee's duty to defend and indemnify.

*Ex. 9 to Decl. of Gary A. Hamblet*, Dkt. # 27-6 ("*Rental Agreement*"), ¶ 15. Evanston contends that under California law, this clause would not be construed to require Keigwins to indemnify SCRAMP for injuries caused by SCRAMP's own negligence or gross negligence. *See Opp.* 22:19–26; *see also Heppler v. J.M. Peters Co.*, 73 Cal. App. 1265, 1278 (holding that for an indemnification clause to apply to injuries arising from the indemnitee's negligence, it must "use

---

forward. Evanston cites only to deposition testimony where Lance Keigwin says that he largely let Naughton handle any insurance issues and therefore had no recollection of SCRAMP's request or the addition of the Premises Endorsement. *See Pl. SUF* ¶ 39; *Deposition of Lance Keigwin*, Dkt. # 27-4 ("*Keigwin Dep.*"), 18:19–20:24. Nevertheless, the fact that the Premises Endorsement was added in 2013 lines up with Varley's 2013 email, and Defendants have not disputed this sequence of events, so the Court treats Evanston's contention that the Premises Endorsement was added in response to SCRAMP's request as undisputed for purposes of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

specific, unequivocal contractual language to that effect"). It argues that this gives rise to an inference that Keigwins' insurance policy was likewise not intended to cover SCRAMP for injuries arising from SCRAMP's own negligence. *See Opp.* 21:26–22:2.

  *ii.*  *Discussion*

  The Court concludes that the extrinsic evidence proffered by Evanston does not reveal any ambiguity in the otherwise unambiguous insurance policy. Beginning with the history of Keigwins' insurance policies, the evidence read in the light most favorable to Evanston *does* support its position that the sentence in the Premises Endorsement providing that the Evanston policy would be primary and non-contributory was added to the policy in response to a request to that effect by SCRAMP. *See Pl. SUF* ¶ 39. However, nothing in the evidence explains why the other language in the Premises Endorsement supplying the additional insureds with coverage for injury that "arises out of the premises" rented by Keigwins was added at the same time. Keigwins' owner Lance Keigwins denied recollection of any of the events surrounding the addition of the Premises Endorsement. *Keigwin Dep.* 18:19–19:8, 20:2–24. And SCRAMP employee Judy Varley testified only that she had never thought about the hypothetical question of whether the Evanston policy would provide coverage for an injury where SCRAMP was at fault and Keigwins was exonerated. *See Deposition of Judy Varley*, Ex. 2 to Decl. of Gary A. Hamblet, Dkt. # 27-4 ("*Varley Dep.*"), 53:5–25. She did *not* testify that she understood the policy as *not* providing coverage in that situation. *See id.* Notably, Evanston has not put forth any evidence from either itself or from Naughton, the entity that was responsible for adding the Premises Endorsement, about why the section of the Premises Endorsement providing coverage for injuries arising from the rented premises was added to the policy if the intent of the amendment was only to make clear that the Evanston policy would be primary and non-contributory.

  In short, all that the evidence shows is that nobody knows or recalls why the full Premises Endorsement—including the provision providing coverage for injuries arising from the premises—was added to the Evanston policy in 2013 and remained in successor policies for years afterwards. It is clear that the full endorsement was not necessary to carry out SCRAMP's request that the Evanston policy be primary and non-contributory; that change could have been made by simply adding the sentence "The coverage provided by this insurance is primary and non-contributory" to the existing Negligence Endorsement. The mere lack of an explanation for why the amendment went further and added the full Premises Endorsement is not enough to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

create ambiguity that would justify departing from the policy's unambiguous language.[5]

As for the indemnity agreement between Keigwins and SCRAMP, Evanston relies on *St. Paul Fire & Marine Insurance Co. v. American Dynasty Surplus Lines Insurance Co.*, 101 Cal. App. 4th 1038, 1056–57 (2001), for the proposition that the Evanston insurance policy should not be construed to provide coverage to SCRAMP for injuries that Keigwins would not have had to indemnify SCRAMP for—namely injuries caused by SCRAMP's own negligence. *See Opp.* 20:24–23:3. In *American Dynasty*, the California Court of Appeal looked to an indemnity agreement in interpreting an ambiguous provision in an insurance policy, concluding that under the circumstances of that case, the policy's coverage for an additional insured "could not reasonably be expected to be more expansive than [the indemnitor's] individual promise of indemnity." *American Dynasty*, 101 Cal. App. 4th at 1059. However, as a later decision explained, the court in *American Dynasty* looked to the indemnity agreement only to *resolve* an ambiguity in the policy language, not to create one. *See Am. Cas. Co. of Reading, Pa. v. Gen. Star Indem. Co.*, 125 Cal. App. 4th 1510, 1528 (2005). Unlike in *American Dynasty*, the language of the Evanston policy is not ambiguous, so it is not appropriate to look to an agreement to which Evanston was not a party to interpret the meaning of policy language that was inserted by Evanston or its authorized agent. *See id.* at 1530 ("[W]e are solely concerned with the extent of [the insurer's] liability under the provisions of *its* additional insured endorsement. That liability should depend solely on the language of *its* policy, not on the language of a separate contract to which it is *not* a party.")

Finally, even if the Court were to accept Evanston's argument that the policy is ambiguous, ambiguities in insurance contracts are generally resolved in favor of coverage to protect the reasonable expectations of the insured. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 831 (1990). The evidence Evanston has put forward does not justify departing from this

---

[5] Evanston has argued that Defendants' interpretation of the policy as providing coverage for all injuries arising from the premises would effectively negate the provision in the Negligence Endorsement limiting coverage to injuries caused by Keigwins' negligence. *See Opp.* 18:3–16. But Evanston's position that the Premises Endorsement was added only to make clear that the policy was primary and non-contributory would render much of the language in Premises Endorsement meaningless because only one sentence out of that multi-section endorsement was necessary to make that change. Accordingly, both parties' interpretations involve some superfluous language. In this circumstance, the Court must adhere to the plain meaning of the text, which indicates that the two endorsements were meant to operate independently to provide coverage to additional insureds for two different types of injuries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

general rule because it does not shed any light on what the potential insureds (Keigwins and SCRAMP) expected.[6] Accordingly, even assuming that the language of the policy is ambiguous as to whether the Premises Endorsement covers SCRAMP for injuries that were not caused by Keigwins' negligence, the endorsement must be read in favor of providing SCRAMP with coverage.

For these reasons, the Court concludes that the Premises Endorsement in Evanston policy provided SCRAMP with coverage for injuries arising out of the premises rented by Keigwins, regardless of whether the injuries were caused by Keigwins' negligence. It now turns to the question of whether the injuries Dziurzynski alleged in the underlying action fall within this interpretation of the Premises Endorsement.

B.  Dziurzynski's Claim

Viewing what transpired in the Dziurzynski incident in the light most favorable to Evanston, Dziurzynski was riding his motorcycle on the track at Laguna Seca Raceway when he (1) left the track, (2) traveled 60 yards through a gravel area adjacent to the racetrack (which is designated as an area where riders can slow down and come to a safe stop) (3) to a dirt strip where he (4) ran into a ditch and hit an exposed pipe, causing him to be ejected from the motorcycle. *See Pl. SUF* ¶¶ 48–52. The location where the Dziurzynski was injured was "not visible from the track" and was beyond the area Keigwins normally inspected. *See id.* ¶ 52. The state court granted summary judgment in favor of Keigwins on Dziurzynski's claims, in part because it concluded that Keigwins had no knowledge of the ditch or the pipe that caused the accident. *See id.* ¶ 53.

The rental agreement between Keigwins and SCRAMP gave Keigwins exclusive use of the Laguna Seca "racetrack" and "paddock area." *See Rental Agreement* at 2. A diagram of the facility attached as an exhibit to the agreement depicted the paddock area, but it did not show the

---

[6] Evanston contends that there are triable issues of fact as to the correct interpretation of the contract. *See Opp.* 23:1–3. However, even accepting Evanston's argument that the policy is ambiguous, a trial is necessary to resolve ambiguity in a contract only when the extrinsic evidence is in conflict. *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004). Here, the evidence read in the light most favorable to Evanston says nothing about why the section providing coverage for injuries arising out of the rented premises was added to the policy if it was not intended to have any effect. This is not a conflict in the extrinsic evidence; instead, it is a sheer *absence* of evidence supporting Evanston's theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

perimeter of the entire racetrack. *See id.*; *Pl. SUF* ¶ 27. It is apparently difficult to determine precisely where the racetrack ends. When asked how one would define the edge of the racetrack, SCRAMP's Judy Varley testified "You don't" and went on to agree that "[t]here's no clear definition." *See Pl. SUF* ¶ 27.

As explained above, the Premises Endorsement provided SCRAMP with coverage for any injury that "arises out of the premises that . . . was . . . rented" by Keigwins. *See Evanston Policy*, at A-11. Evanston contends that there is a factual dispute as to whether the ditch and pipe that injured Dziurzynski were located within the physical boundaries of the racetrack or paddock area (i.e. the premises that was rented by Keigwins). *See Opp.* 24:22–26:9. But while there may be a dispute about the nature of the precise location of Dziurzynski's injury, it is not a material one for purposes of determining whether the injury falls within the scope of the Evanston policy. The Premises Endorsement covers SCRAMP for any injury that "*arises out of* the premises." *See Evanston Policy*, at A-11 (emphasis added). Under California law, "arises out of" clauses in insurance policies "broadly link[] a factual situation with the event causing liability, and connote[] only a minimal causal connection or incidental relationship." *Syufy*, 69 Cal. App. 4th at 328. In determining whether a particular injury is covered under an "arises out of" clause, courts apply "a broad 'but for' causation test" such that "any connection between the liability and the . . . operations would trigger the insurer's obligations." *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710, 717 (2003).

Here, there is no genuine dispute that Dziurzynski's injury arose out of the Laguna Seca Raceway within the meaning of the Premises Endorsement. Dziurzynski's trip off the racetrack, through the gravel runoff area, and into the ditch was a single sequence of events. Whether Dziurzynski technically crossed the boundary of the racetrack before crashing is of no moment; his injury had far more than an "incidental relationship" to the racetrack. *See Syufy*, 69 Cal. App. 4th at 328. Under any measure, his participation in Keigwins' event at the racetrack—which was insured by the Evanston policy—was the "but for" cause of his injury.[7] *See Hartford*, 110 Cal. App. 4th at 717.

For these reasons, the Court concludes that there is no triable issue of fact as to whether Dziurzynski's alleged injuries fall within the scope of the Premises Endorsement of the Evanston policy. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment.

---

[7] Notably, Evanston has not cited a single case in support of its theory that Dziurzynski's injury had to have occurred within the boundaries of the racetrack to be covered by the Premises Endorsement, much less one denying coverage in similar circumstances. *See Opp.* 24:22–26:9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9466 PSG (AFMx) | Date | May 14, 2019 |
|---|---|---|---|
| Title | Evanston Insurance Company v. Scottsdale Insurance Company, et al. | | |

IV. <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on Evanston's claims and on Defendants' counterclaims. Defendants are **ORDERED** to lodge a proposed entry of judgment consistent with this order no later than **May 24, 2019**.

**IT IS SO ORDERED**.